UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                           **REPORT and**
                                                    **RECOMMENDATION**
v.
                                                    08-cr-00281-WMS-JJM
JOSEPH TIGANO III and
JOSEPH TIGANO, SR.,

                        Defendants.
_____

## INTRODUCTION

Defendants have moved to suppress physical evidence seized pursuant to a search warrant issued by Hon. Hugh B. Scott on July 2, 2008. Meyers-Buth Affidavit [51],[1] ¶¶46-64; Tigano Sr.'s Supplemental Motion [52]; Mariano Affirmation [67], Point I. Judge Scott recused himself from consideration of these motions [53], which, being dispositive, were then referred to me by Hon. William M. Skretny for a Report and Recommendation [75]. All other aspects of defendants' pretrial motions remain with Judge Scott [53, 75].

Oral argument was held before me on March 15, 2011 [99], and the parties thereafter submitted post-argument briefs addressing the good faith exception to the exclusionary rule in light of United States v. Clark, __F.3d__, 2011 WL 781597 (2d Cir. 2011) [99, 100, 101]. For the following reasons, I recommend that defendants' motions to suppress be denied.

## BACKGROUND

Defendants are charged in an eight-count indictment [1] with a variety of drug trafficking offenses, including maintaining a premises at 30 Mill Street, Cattaraugus, New York,

---

[1]     Bracketed references are to CM-ECF docket entries.

for purpose of unlawfully manufacturing, distributing and using marijuana, in violation of 18 U.S.C. §856(a)(1). They seek suppression of the items seized from that premises pursuant to a search warrant issued by Judge Scott on July 2, 2008. The warrant authorized a search of the premises, which was classified as a commercial building, for evidence of violations of 18 U.S.C. §§841(a)(1) and 846. Mariano Affirmation [67], Ex. A. It was supported by the affidavit of Drug Enforcement Administration Task Force Agent ("TFA") Cory Higgins. Id.

TFA Higgins' affidavit relied heavily upon a confidential source ("CS") who had been "familiar" with defendant Tigano III since November 2006. Id., ¶10. The CS advised authorities on February 8, 2008 that defendant Tigano III, the owner of the premises, was utilizing the premises to facilitate his marijuana grow operation. Id., ¶6. According to TFA Higgins, the CS, a concerned citizen, was "found to be accurate and reliable and . . . never proved to be false or misleading." Id., ¶8. The information provided by the CS was corroborated through other independent sources and "resulted in the identification of other individuals suspected to be involved in drug trafficking". Id.

Although the premises allegedly housed a furniture manufacturing business, the CS did not observe any active furniture manufacturing equipment in the building. Id., ¶¶6, 10. When the CS was in the premises, "he/she could smell the strong 'skunk-like' odor he/she recognized as the scent, to be associated with marijuana." Id., ¶11.[2] The CS was familiar with marijuana and its smell for his/her former employment as a law enforcement officer. Id. The CS also observed "a 'heavy' 480 volt 200 amp circuit running to the basement" of the

---

[2] The CS admitted that he/she could not distinguish this odor as being marijuana during his/her initial visit. Mariano Affirmation [67], Ex. A, ¶11.

premises, which the CS found unusual for an alleged furniture business, and a "4 to 5 ton air conditioning unit was mounted to cool only the basement." Id., ¶12.

In addition to the information provided by the CS, TFA Higgins' affidavit relied on:

- The observations of an undercover agent ("UC") that traveled to the premises on February 29, 2008 with the CS. Id., ¶15. Although they were unable to enter the premises, the UC smelled the odor of marijuana emanating from the premises. Id., ¶16.

- A pole camera installed on May 2, 2008, which operated until the search warrant was sought, revealed no shipments of raw materials or finished product from the premises. Id., ¶¶18-20.

- A forward looking infrared ("FLIR") scan was conducted by the Erie County Sheriff's Office Aviation Unit on March 2, 13 and 23, 2008, which, according to Captain Kevin Caffery, revealed "heat anomalies . . . consistent with an indoor marijuana grow." Id., ¶¶35-38.

- Utility records from September 2007 through June 28, 2008, which revealed monthly electric bills for the premises ranging from $5,229.00 to $7,446.02. All of these bills were paid by money order. Id., ¶¶27-29.

- Bank records indicated that defendant Tigano III held signatory authority over two bank accounts, which had approximately $350,000 in deposits during the years 2005 though 2007, but no customer checks were deposited into either account for the purchase of cabinets or furniture and the monies withdrawn from the accounts did "not appear to be used for the operation of [the] business." Id., ¶32.

- In 2001 defendant Tigano III "was named in a DEA investigation in New York City involving a sophisticated marijuana cultivation and distribution organization." Id., ¶21. According to investigators in that case, "the cooperating defendant stated [that defendant Tigano III] was responsible for obtaining elaborate lighting systems, which are necessary to promote indoor grow environments. . . . [T]his organization began to expand its indoor marijuana cultivation and distribution efforts outside the New York City area to include areas in Central and Western New York State." Id.

- Defendant Tigano III was convicted in 1996 for possession of

        marijuana in the first degree arising from the seizure of 155 marijuana plants and 550 marijuana seedlings from his residence. Id., ¶6.

- ■ Unaware of the investigation, Cattaraugus County Deputy Sheriff Joseph Magiera entered the premises on June 3, 2008 to serve defendant Tigano III with court documents relative to building code violations. Id., ¶¶22, 24. Deputy Magiera "observe[d] some machinery within certain sections of the building he was in which appeared non operational, but also observed no wood or saw dust within the [premises] which would be consistent with furniture manufacturing." Id., ¶26.

## ANALYSIS

Defendants argue that the search warrant was not supported by probable cause, was based upon stale information, and that the fruits of the warrantless FLIR scan should not have been considered by the court, since it violated the Fourth Amendment. Mariano Affirmation [67], Point I.[3] In response, the government argues that TFA Higgins' affidavit "amply supports a showing of probable cause", that the continuing nature of the alleged criminal enterprise undercuts staleness, that the warrant requirement for FILR scans is inapplicable to commercial premises such as this, and that, even if Judge Scott's probable cause determination is "a close one", the Leon good-faith exception applies. Government's Response [54], pp. 5-10.

      Defendants' motion to suppress does not require a *de novo* review of the search warrant application. "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" Illinois v. Gates, 462 U.S. 213, 236 (1983). "'[C]ourts should not invalidate . . . warrants by interpreting affidavits in a hypertechnical, rather

---

      [3] Defendant Tigano III moved [66] to join in defendant Tigano, Sr.'s Second Supplemental Motion for suppression [67].

than a common sense, manner.'" Id. "[S]o long as the magistrate had a 'substantial basis for . . . concluding' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Id.

"A judge's probable-cause determination is not overly strict. Presented with a warrant application, the judge must 'simply . . . make a *practical*, *common-sense* decision whether, given all the circumstances set forth in the affidavit set forth before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place.'" United States v. Martin, 426 F. 3d 68, 74 (2d Cir. 2005), cert. denied, 547 U.S. 1192 (2006) (emphasis in original, quoting Gates, supra). "'Probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules.'" Id. "The inquiry turns on an 'assessment of probabilities' and inferences, not on proof of specific criminal conduct beyond a reasonable doubt or even by a preponderance of the evidence . . . . Simply put, probable cause is a 'relaxed standard,' . . . not a legal determination of legal guilt or liability". Id. at 76. Probable cause "does not demand certainty but only a '*fair probability*' that contraband or evidence of a crime will be found." United States v. Gaskin, 364 F.3d 438, 457 (2d Cir. 2004), cert. denied, 544 U.S. 990 (2005) (emphasis added).

In arguing that Judge Scott lacked probable cause to issue the warrant, defendants note that deputy Magiera failed to smell marijuana in the premises, that there was no indication that the CS (or anyone else) ever observed marijuana in the premises, that there was no controlled buy from the premises, that there was no indication how many times the CS was at the premises or where in the premises he was given access, that there was no indication of whether

the electrical usage was higher than expected for such a facility, and the absence of any marijuana growing supplies entering the premises. *See* Meyers Buth Affidavit ¶¶ [51], 51-52, 54-55, 57, 60; Mariano Affirmation [67], ¶¶21-22, 24.

However, the probable cause determination must be based on the totality of the circumstances, including the CS's observations, the FLIR Scan, and defendant Tigano III's alleged involvement in other marijuana grow operations. Judge Scott was also entitled to rely on TFA Higgins' belief that the CS's observations "indicate[] the existence of a considerable indoor marijuana grow operation." Mariano Affirmation [67], Ex. A, ¶12. "[C]ourts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." Gaskin, 364 F.3d at 457. *See* United States v. Funderburk, 492 F. Supp. 2d 223, 253 (W.D.N.Y. 2007) (Arcara, J./Foschio, M.J.).

Even in the absence of any observations of marijuana in the premises, I find that there was sufficient probable cause to support the search warrant, especially recognizing that probable cause does not require a showing of certainty and the deferential standard of my review, under which "doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants". Gates, 462 U.S. at 237 n. 10.

I also find no merit to defendants' staleness arguments. "[I]n investigations of ongoing narcotics operations, 'intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale' . . . . Indeed, 'narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness.'" United States v. Ortiz, 143 F.3d 728, 732-733  (2d Cir.), cert. denied, 525 U.S. 910 (1998). *See* United States v. Greany, 929 F.2d

523, 525 (9th Cir. 1991)("When the evidence sought is of an ongoing criminal business of a necessarily long-term nature, such as marijuana growing, rather than that of a completed act, greater lapses of time are permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time").

Other than the utility records, which demonstrated that the electric bill for the premises for the period ending on June 28, 2008 was over $5,000, the most recent information supporting probable cause was the CS's observation on June 18, 2008 (approximately 2 weeks before the warrant) that the premises smelled like marijuana. Defendants argue that the CS's observations on June 18, 2008 should be disregarded because it is not clear whether he even entered the premises that day and his observations are belied by the fact that the Deputy Magiera, just days earlier, failed to smell marijuana while in the premises. However, in view of the alleged ongoing marijuana grow operation alleged in the affidavit (*see* Greany, 929 F.2d at 525 (two year-old information on a marijuana grow operation was not stale)), I am not persuaded by defendants' argument that the other information in the search warrant, which was "at least a month and a half old", would render the search warrant stale (Mariano Affirmation [67], ¶¶38-39).

Defendants further argue that the FLIR scan of the premises constituted an unconstitutional search, relying upon Kyllo v. United States, 533 U.S. 27 (2001). Mariano Affirmation [67], ¶¶33-39. "While *Kyllo* broadly protects homes against warrantless thermal imaging, the case before us involves the use of a thermal imager to scan the [defendants'] commercial buildings. There is a reasonable expectation of privacy in business premises, yet it is less than the reasonable expectation of privacy enjoyed by the home." United States v. Elkins,

300 F.3d 638, 646 (6th Cir. 2002) (*citing* New York v. Burger, 482 U.S. 691, 699-700 (1987)). *See also* United States v. Haqq, 278 F.3d 44, 54 (2d Cir. 2002) ("While we are protected from unreasonable government intervention in our businesses, automobiles and in public, the protection we enjoy in these situations is far less than the ultimate protection we receive in our homes").

Since "[c]ourts should avoid unnecessary constitutional questions", Elkins, 300 F.3d at 647, I need not determine whether Kyllo would also prohibit thermal imaging of a commercial building, because even if the FLIR scan were not considered, I conclude that the other information set forth in TFA Higgins' affidavit created probable cause for issuance of the search warrant.

Moreover, even assuming *arguendo* that the search warrant was not supported by probable cause, the evidence seized is nevertheless admissible under the good faith exception to the exclusionary rule. *See* United States v. Leon, 468 U.S. 897, 923 (1984). The Court in Leon recognized that "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued", in which case "suppression therefore remains an appropriate remedy": (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) if "the issuing magistrate wholly abandoned his judicial role"; (3) if the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) if the warrant "is so facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid." Id. at 922-23.

Defendants rely on the second and third of these circumstances in support of suppression. Defendant Tigano Sr.'s Supplemental Memorandum [101], p. 2.[4] They argue that Judge Scott wholly abandoned his neutral and detached role by relying on the government's use of an illegal and unconstitutional FLIR scan. Id., p.3. I disagree. As discussed above, it is not evident that the FLIR scan was an unconstitutional search, given the alleged commercial nature of the premises. See Elkins, 300 F.3d at 646; Haqq, 278 F.3d at 54. Although defendants suggested at oral argument that the premises also functioned as a residence, this was not evident from the face of the warrant application, which described the premises as a "multistory warehouse" which was "classified as a commercial building". Mariano Affirmation [67], Ex. A, ¶6, Attachment A. My inquiry must focus only upon the facts as disclosed in the affidavit - not as they may have actually existed. "'All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath'". United States v. Falso, 544 F. 3d 110, 122 (2d Cir. 2008), cert. denied, 130 S.Ct. 154 (2009).

Relying on the same arguments directed at the sufficiency of the search warrant, defendants also argue that reliance upon the application was unreasonable. Defendant Tigano Sr.'s Supplemental Memorandum [101], pp. 4-5. "Such a concern most frequently arises when affidavits are bare bones, i.e., totally devoid of factual circumstances to support conclusory allegations", Clark, 2011 WL 781597 at *12, whereas "[a]t the opposite end of the spectrum are cases in which a defective warrant issued based on an affidavit providing detailed factual allegations in support of probable cause", which "almost invariably demonstrate reasonable reliance." Id.

---

[4]    Defendant Tigano III also moved to join in this submission [103].

While Judge Scott's determination of probable cause may have been a close call, it was far from being "totally devoid" of factual support. Under these circumstances, "agents [are] entitled to rely reasonably upon the issuing judge's determination of that very question". United States v. Sykes, 424 F.Supp.2d 590, 602 (W.D.N.Y. 2006) (Telesca, J.), aff'd, 304 Fed. Appx. 10 (2d Cir. 2008), cert. denied, 129 S.Ct. 2022 (2009).

**CONCLUSION**

For these reasons, I recommend that defendants' motions to suppress physical evidence be denied.

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by May 9, 2011 (applying the time frames set forth in Fed. R. Crim. P. 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of this Court's Local Rules of Criminal Procedure, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such

objection and shall be supported by legal authority", and pursuant to Local Rule 58.2(a)(4), the objections must include "a written statement either (1) certifying that the objections do not raise new legal/factual arguments, or (2) identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: April 21, 2011

                                             /s/ Jeremiah J. McCarthy
                                             JEREMIAH J. MCCARTHY
                                             United States Magistrate Judge